```
1                    UNITED STATES DISTRICT COURT
2                     DISTRICT OF PUERTO RICO

3    V.W.F. CORPORATION, et al.,
4
5          Plaintiffs,
                                         Civil No. 06-1508 (JAF)
6          v.

7    CAPITAL HOUSING PARTNERS CLXII,
8    et al.

9          Defendants.
```

10                        **OPINION AND ORDER**

11        Plaintiffs, V.W.F. Corporation ("V.W.F."), Ismael Fernández

12   ("Fernández"), his wife Virginia Fernández, and their conjugal

13   partnership, bring the present diversity action against Defendants

14   Capital Housing Partners CLXII ("CHP-162") and C.R.H.C. of Puerto

15   Rico ("CRHC") for breach of contract and against Defendant Frank Bond

16   ("Bond") for tortious interference with contractual agreements.

17   Docket Document No. 3. Defendant Bond has moved to dismiss

18   Plaintiffs' claims, asserting that Plaintiffs' claims against him are

19   either barred by Puerto Rico's one-year statute of limitations or

20   fail to state a claim upon which relief may be granted. Docket

21   Document No. 10. Alternatively, Defendant Bond asserts that

22   abstention would be appropriate in this case and urges the court to

23   stay the proceedings pending the outcome of a parallel lawsuit that

24   was filed in Maryland Circuit Court by Defendant Bond against

25   Plaintiffs for breach of fiduciary duties and mismanagement. Id. For

Civil No. 06-1508 (JAF)                                            -2-

1   the reasons stated below, we deny Defendant's motion to dismiss and

2   decline to abstain from this case.

3                                    **I.**

4                    **Factual and Procedural Synopsis**

5        We derive the following factual summary from Plaintiffs'

6   Verified Complaint.  Docket Document No. 1.  As we must, we assume

7   all of their allegations are true and we make all reasonable

8   inferences in their favor.  Alternative Energy, Inc. v. St. Paul Fire

9   and Marine Ins., Co., 267 F.3d 30, 36 (1st Cir. 2001).

10       At issue in this litigation is a partnership that owns an

11  apartment building ("the apartments") in San Juan, Puerto Rico.  The

12  original partnership was comprised of three parties.  The partnership

13  agreement established that, while Defendant CHP-162's interest was a

14  limited one, Defendants CHRC's and Fernández' interests were general.

15  The fact that CHP-162 only had a limited interest in the partnership

16  is a significant fact, because the terms of the partnership agreement

17  explicitly state that limited partners cannot take part in the

18  management or control of the business of the partnership, nor

19  transact any business in the name of the partnership.  The right to

20  handle these responsibilities fell exclusively to general partners

21  CHRC and Fernández.

22       Despite its ownership of the apartments, the partnership did not

23  directly operate them.  Instead, pursuant to a January 1984 agreement

24  ("the management agreement"), the partnership contracted out the

1    management of the apartments' day-to-day affairs to V.W.F., a

2    corporation owned by Fernández and his conjugal partnership.

3    Therefore, not only did Fernández have a general interest in the

4    partnership that owns the apartments, but he also owned the

5    corporation that the same partnership had hired to manage the

6    apartments.

7        In March, 2003, Fernández offered to buy Defenants CHP-162 and

8    CHRC out of the partnership.  After some negotiations, CHRC accepted

9    the offer, while CHP-162 tendered a counter-offer to sell its

10   interest for a higher price.  Fernández accepted this counter-offer

11   but, nonetheless, some aspects of the sale still needed to be

12   finalized.

13       Plaintiffs allege that Defendant Bond, who is the principal

14   owner of Defendant CHP-162, tortiously interfered with the

15   partnership and management agreements by engaging in a scheme to

16   manage, control, and/or transact business in the name of the

17   partnership. These acts include: (a) the review of financial

18   documents pertaining to the apartments by Bond's agents in March

19   2004; (b) Bond's negotiations with Banco Popular to refinance the

20   partnership's mortgage in July 2004; (c) Bond's appraisal of the real

21   estate occupied by the apartments in May 2004; (d) Bond's allegedly

22   threatening letters that were sent to Fernández in December 2003; and

23   (d) Bond's filing of a "meritless" lawsuit in Maryland against

24   Plaintiffs on August 4, 2005.  Docket Document No. 3.  According to

Civil No. 06-1508 (JAF)                                               -4-

1    Plaintiffs, Bond committed these acts to prevent the sale of CHP-

2    162's interest to Fernández from becoming final.

3        Plaintiffs filed their complaint in the instant action on

4    May 22, 2006, alleging, inter alia, that Defendant Bond's actions

5    collectively constituted a scheme to tortiously interfere with the

6    terms of the partnership agreement precluding limited partners from

7    managing and controlling partnership affairs.  Docket Document No. 3.

8    Plaintiffs also believe that Defendant Bond's actions tortiously

9    interfered with the management agreement and the sale of CHP-162's

10   interest in the partnership to Fernández.  Id.  Defendant Bond moved

11   to dismiss on September 1, 2006, asserting that most of the allegedly

12   tortious acts that Plaintiffs alleged in their complaint are time-

13   barred and that the only act that falls within the prescription

14   period - Bond's filing of a lawsuit against Plaintiffs in Maryland -

15   is not an actionable offense under an abuse of process theory.

16   Docket Document Nos. 8, 10, 18. Alternatively, Defendant Bond asserts

17   that we should abstain from the case and stay the proceedings pending

18   the resolution of the Maryland action.  Docket Document No. 8.

19   Plaintiffs opposed on September 25, 2006.  Docket Document No. 16.

20   Defendant Bond replied on October 6, 2006.  Docket Document No. 18.

21                                   II.

22            **Motion to Dismiss Standard under Rule 12(b)(6)**

23       Under Federal Rule of Civil Procedure 12(b)(6), a defendant may

24   move to dismiss an action against him based solely on the pleadings

Civil No. 06-1508 (JAF)                                                    -5-

1   for the plaintiff's "failure to state a claim upon which relief can

2   be granted." FED. R. CIV. P. 12(b)(6).   In assessing a motion to

3   dismiss, "we accept as true the factual averments of the complaint

4   and draw all reasonable inferences therefrom in the plaintiffs'

5   favor." Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d

6   61, 62 (1st Cir. 2004).   We then determine whether the plaintiff has

7   stated a claim under which relief can be granted.

8        We note that a plaintiff must only satisfy the simple pleading

9   requirements of Federal Rule of Civil Procedure 8(a) in order to

10  survive a motion to dismiss. Swierkiewicz v. Sorema N.A., 534 U.S.

11  506 (2002); Morales-Villalobos v. Garcia-Llorens, 316 F.3d 51, 52-53

12  (1st Cir. 2003); DM Research, Inc. v. Coll. of Am. Pathologists, 170

13  F.3d 53, 55-56 (1st Cir. 1999).   A plaintiff need only set forth "a

14  short and plain statement of the claim showing that the pleader is

15  entitled to relief," FED. R. CIV. P. 8(a)(2), and need only give the

16  respondent fair notice of the nature of the claim and petitioner's

17  basis for it. Swierkiewicz, 534 U.S. at 512-15.   "Given the Federal

18  Rules' simplified standard for pleading, '[a] court may dismiss a

19  complaint only if it is clear that no relief could be granted under

20  any set of facts that could be proved consistent with the

21  allegations.'" Id. at 514 (quoting Hishon v. King & Spalding, 467

22  U.S. 69, 73 (1984)).

23       Affirmative defenses, such as Defendant's statute of limitations

24  defense, may be raised in a Rule 12(b)(6) motion to dismiss. Centro

Civil No. 06-1508 (JAF)                                              -6-

1    Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st

2    Cir. 2005).  However, dismissal based on such an affirmative defense

3    is only appropriate when the pleader's allegations leave no doubt

4    that an asserted claim is time-barred.  Id.

III.

**Analysis**

7        Defendant Bond asserts that Plaintiffs' tortious interference

8    claims should be dismissed because Plaintiffs fail to allege the

9    elements of an abuse of process claim, and Plaintiffs' claims are

10   barred by Puerto Rico's one-year statute of limitations.[1]  Docket

11   Document No. 10.  Alternatively, Defendant Bond asserts that

12   abstention would be appropriate in this case and urges the court to

13   stay the proceedings pending the outcome of a parallel lawsuit that

14   was filed in Maryland Circuit Court by Defendant Bond against

15   Plaintiffs for breach of fiduciary duties and mismanagement.  Id.  We

16   will discuss the motion to dismiss and the abstention arguments in

17   turn.

18   **A.   Motion To Dismiss**

19       Plaintiffs assert that Defendant Bond's filing of a lawsuit

20   against them in Maryland state court constitutes an abuse of process.

---

[1]  Defendant Bond also asserts that Plaintiffs failed to plead a malicious prosecution claim, Docket Document Nos. 8, 18, but we will not address this argument because Plaintiffs assert in their opposition brief that their tortious interference claim alleges an abuse of process and not malicious prosecution.  See Docket Document No. 16.

1    <u>Docket Document Nos. 3, 16</u>.  Defendant Bond, however, claims that

2    Plaintiffs have not properly pleaded this claim.   <u>Docket Document</u>

3    <u>No. 8</u>.  We find in favor of Plaintiffs.

4         Typically, an abuse of process claim is most appropriate for

5    challenging another party's use of individual legal procedures,

6    rather than the lawsuit as a whole. <u>Simon v. Navon</u>, 71 F.3d 9, 15

7    (1st Cir. 1995).  However, "[t]he abuse tort often is given wider

8    berth . . . and courts typically will recognize such a claim . . . if

9    a plaintiff can show an improper use of process for an immediate

10   purpose other than that for which it was designed and intended." <u>Id.</u>

11   (internal quotations omitted).  For example, "a defendant who

12   explicitly threatened to file a baseless lawsuit solely for the

13   purpose of forcing the plaintiff's action in an unrelated matter, and

14   then did commence suit, could be held liable for [abuse of process]."

15   <u>Id.</u>  The reason for this is because, "[i]n such a case, the otherwise

16   normal procedure of filing a lawsuit is transformed into an act of

17   abuse by the coincidence of the threat." <u>Id.</u>

18        To properly allege an abuse of process claim under Puerto Rico

19   law, a plaintiff must assert that (1) the lawsuit was filed with an

20   ulterior motive, and (2) it was an act of abuse.  See <u>Rucci v. INS</u>,

21   405 F.3d 45, 49 (1st Cir. 2005).  We find that Plaintiffs have

22   sufficiently pleaded each of these elements.

23        In their complaint, Plaintiffs averred that, "starting in

24   December of 2003 and continuing thereafter, Defendant Bond, through

Civil No. 06-1508 (JAF)                                                    -8-

1    stateside counsel, sent baseless letters to Fernández and others

2    threatening to bring an action for damages for purported

3    mismanagement of [the partnership] and the [apartments]." Docket

4    Document No. 3. Plaintiffs further alleged that:

5             [o]n or about August 4, 2005, Bond, individually
6             and derivatively for the use and benefit of CHP-
7             162, filed suit, in the Circuit Court for
8             Montgomery County, Maryland, against Fernández,
9             V.W.F. and others, asserting meritless claims
10            with the deliberate and malicious intent of
11            reneging the valid and binding contract to sell
12            its interest in [the partnership] to Fernández
13            and of tortiously interfering with the . . .
14            Partnership Agreement and the V.W.F. Management
15            Agreement.

16            The letters of counsel and the filing of the
17            legal action . . . were part of the continuing
18            and ongoing ill-scheme devised and orchestrated
19            by Bond and CHP-162 to renege their consent to
20            the sale of the latter's interest in [the
21            partnership] for the agreed $1,500,000.00 and to
22            tortiously interfere with said purchase
23            agreement, the [partnership] agreement and the
24            V.W.F. Management Contract.

25
26   Id. Based on these allegations, the first element of an abuse of

27   process claim - ulterior motive - has been sufficiently pleaded.

28   Plaintiffs stated that Defendant Bond filed a "meritless" lawsuit

29   with "deliberate and malicious intent of" preventing the sale of CHP-

30   162's interest in the partnership to Fernández, and "tortiously

31   interfering" with the partnership and management agreements. Id.

32       The second element, which requires Plaintiffs to allege that the

33   lawsuit itself was an act of abuse, has been sufficiently pleaded as

34   well. Plaintiffs alleged that, before Defendant Bond filed his

1   "meritless" lawsuit in Maryland challenging, inter alia, Fernández'

2   management of the partnership and the apartments, he sent "baseless

3   letters to Fernández and others threatening to bring an action for

4   damages for purported mismanagement of [the partnership] and the

5   [apartments]." Id. As such, Defendant Bond's "otherwise normal

6   procedure of filing a lawsuit [was] transformed into an act of abuse

7   by the coincidence of the threat." See Simon, 71 F.3d at 15.

8   Accordingly, we find that Plaintiffs have properly pleaded an abuse

9   of process claim.

10      Next, Defendant Bond asserts that Plaintiffs' tortious

11   interference claims, which were brought pursuant to 31 U.S.C. § 5141

12   (2004)("Article 1802"), are barred by Puerto Rico's one-year statute

13   of limitations for tort actions, 31 L.P.R.A. § 5298 (2004)("Article

14   1868"). Docket Document No. 8. Article 1868 states that tort

15   actions brought under Puerto Rico law must be commenced within one-

16   year "from the time the aggrieved person had knowledge thereof."

17   § 5298(2). Because Plaintiffs filed their complaint on May 22, 2006,

18   Docket Document No. 3, the prescription period started to run on

19   May 22, 2005. Only one of the allegedly tortious acts that was

20   pleaded in the complaint - Bond's filing of a lawsuit in Maryland

21   against Plaintiffs on August 4, 2005 - actually took place within the

22   prescription period. Docket Document Nos. 3, 8. The other acts

23   pleaded in the complaint took place before the prescription period,

24   including: (a) the review of financial documents pertaining to the

1    apartments by Bond's agents in March 2004; (b) Bond's negotiations

2    with Banco Popular to refinance the partnership's mortgage in July

3    2004; (c) Bond's appraisal of the real estate occupied by the

4    apartments in May 2004; and (d) the allegedly threatening letters

5    that Bond sent to Fernández in December 2003.  Docket Document No. 3.

6         Defendant Bond correctly asserts that the only way the court

7    could consider acts that took place before the prescription period is

8    if Plaintiffs meet the requirements of the continuing tort doctrine.

9    Docket Document No. 18.  To do so, Plaintiffs must sufficiently plead

10   that (1) the one act that took place within the prescription period -

11   the filing of the Maryland action - constituted an unlawful act and

12   (2) that it was part of a series of unlawful acts.  Id. (citing

13   Bonilla v. Trebol Motors Corp., 913 F. Supp. 655, 659-60 (D.P.R.

14   1995)(setting forth the requirements of the continuing tort

15   doctrine)); see also Centro Medico del Turabo, Inc. v. Feliciano de

16   Melecio, 406 F.3d 1, 7 (1st Cir. 2005) (stating that, under the

17   continuing violation doctrine, if a plaintiff "link[s] a number of

18   discriminatory acts emanating from the same discriminatory animus,"

19   and "can also show that at least one act in the series occurred

20   within the limitations period, the suit may be considered timely as

21   to all the acts").

22        The allegations in Plaintiffs' complaint satisfy both of these

23   elements.  We have already observed that Defendant Bond's lawsuit

24   against Plaintiffs in Maryland was filed within the prescription

1    period and constitutes an actionable offense. In addition, Plaintiffs

2    have linked Bond's other allegedly tortious conduct to the  lawsuit

3    that he filed against Plaintiffs, alleging that Bond committed these

4    other acts as part of a "continuing and ongoing ill-scheme" to

5    prevent the sale of CHP-162's interest in the partnership, and

6    interfere with the partnership and the V.W.F. management agreements.

7    See Docket Document No. 3. Therefore, we find, contrary to Defendant

8    Bond's contention, that none of Plaintiffs' other claims are time-

9    barred.[2]

10       Accordingly, we deny Defendant Bond's motion to dismiss.

11   **B.   Abstention**

12       In the alternative, Defendant Bond asserts that, even if the

13   claims brought against him are not dismissed, they should be stayed

14   pending the outcome of the lawsuit that he filed against Plaintiffs

15   in Maryland.  Docket Document No. 8.  Plaintiffs oppose, correctly

16   alleging that abstention is only justified if there are exceptional

---

[2]   However, we note that Defendant Bond has only challenged Plaintiffs' assertion that he is liable for the filing of the lawsuit in Maryland against Plaintiffs.  See Docket Document No. 8.  Bond has not challenged Plaintiffs' contention that he is liable for other acts alleged in the complaint, including: (a) the review of financial documents pertaining to the apartments by Bond's agents in March 2004; (b) Bond's negotiations with Banco Popular to refinance the partnership's mortgage in July 2004; (c) Bond's appraisal of the real estate occupied by the apartments in May 2004; and (d) the allegedly threatening letters that Bond sent to Fernández in December 2003. Docket Document Nos. 3, 8.  Although we find that these other allegedly tortious acts are not time-barred, we limit our findings as to the sufficiency of Plaintiffs' allegations to Bond's filing of the Maryland action.

Civil No. 06-1508 (JAF)                                                    -12-

1    circumstances, and that Defendant has failed to demonstrate that such

2    circumstances exist.

3         "The doctrine of abstention, under which a District Court may

4    decline to exercise or postpone the exercise of its jurisdiction [in

5    deference to parallel state proceedings], is an extraordinary and

6    narrow exception to the duty of a District Court to adjudicate a

7    controversy properly before it." Moses H. Cone Mem'l Hosp. v. Mercury

8    Constr. Corp. ("Moses H. Cone"), 460 U.S. 1, 14 (1983) (internal

9    quotations omitted).  "[D]uplication and inefficiency are not enough

10   to support a federal court's decision to bow out of a case over which

11   it has jurisdiction."  Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir.

12   1991).  Abstention is only justified if there are "exceptional

13   circumstances."  Moses H. Cone, 460 U.S. at 14.

14        In Colorado River Water Conservation District v. United States,

15   the Supreme Court stated that, to determine whether "exceptional

16   circumstances" exist, a court should consider: (1) whether either

17   court has assumed jurisdiction over the property at issue in the

18   litigation; (2) which court first assumed jurisdiction over the case;

19   (3) the geographical inconvenience of the federal forum; and

20   (4) whether abstaining would help avoid piecemeal litigation. 424

21   U.S. 800, 818 (1976). Later, in Moses H. Cone, the Supreme Court

22   added two more factors: (5) whether state or federal law controls;

23   and (6) whether the state forum would protect the interests of the

24   parties in an adequate manner.  460 U.S. at 23-27.  Currently, the

First Circuit applies all six factors to determine whether it is appropriate for a federal district court to stay a case pending the outcome of a parallel state-court proceeding ("the Colorado River doctrine").  See Currie v. Group Ins. Comm'n, 290 F.3d 1, 10 (1st Cir. 2002).

The Supreme Court has cautioned that the Colorado River doctrine should not be applied as "a mechanical checklist." Moses H. Cone, 460 U.S. at 16.  Rather, a court should employ a "careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Id.; see also Villa Marina Yacht Sales, Inc. v. Hatteras Yachts ("Villa Marina"), 915 F.2d 7, 12 (1st Cir. 1990) ("The weight given to any single factor may vary greatly depending on the case, and no one factor is necessarily determinative.").

In making an abstention determination, a court may consider evidence beyond the allegations contained in the complaint. See Downeast Ventures, Ltd. v. Wash. County, No. 05-87-B-W, 2005 U.S. Dist. LEXIS 32649, at *3-4 (D. Me. Dec. 12, 2005)("[C]onsideration of a request for abstention . . . is akin to a motion to dismiss for lack of subject matter jurisdiction" for which evidence beyond the complaint may be considered (internal quotations omitted)). Defendant has attached the docket sheet and two filings from the Maryland action, including his complaint, and the answer and

1    counterclaims filed by several of the defendants.  We will consider

2    all of this evidence in relation to Defendant's abstention argument.

3              **1.   Parallel Proceedings and Jurisdiction Over Res**

4         At the outset, we note that it is undisputed that the federal

5    and Commonwealth lawsuits are sufficiently parallel to trigger the

6    Colorado River doctrine.  See Villa Marina Yacht Sales, Inc. v.

7    Hatteras Yachts ("Villa Marina"), 947 F.2d 529, 533 (1st Cir.

8    1991)(indicating that, as a threshold matter, a court must determine

9    whether the federal and state court proceedings are parallel).

10   Moreover, we note that the first Colorado River factor - jurisdiction

11   over the res in this case - does not apply here, as real property is

12   not a disputed subject of this litigation.

13             **2.   Relative Timing and Progress**

14        Defendant asserts that the second factor, which evaluates the

15   relative timing of the two lawsuits, weighs in favor of abstention,

16   but we disagree.

17        Defendant Bond filed his lawsuit first in Maryland state court

18   on August 4, 2005, and Plaintiffs filed the federal lawsuit in the

19   District of Puerto Rico ten months later on May 22, 2006.  However,

20   the fact that Plaintiffs' lawsuit was filed ten months later is not

21   determinative.  The correct standard by which to evaluate this factor

22   is not only to consider the relative timing of the federal and state

23   actions, but also to compare the relative progress that has been made

24   in each.  First Union Nat'l Bank v. Margo Farms Del Caribe, 875

1   F.Supp. 73, 79 (D.P.R. 1995)("[T]he trend in the First Circuit has

2   been to interpret this factor as one which asks not only which action

3   originated first, but which action is further along in the judicial

4   proceedings."); see also Gonzalez, 926 F.2d at 4 ("[T]he relative

5   progress of the suits is more important than the strict order in

6   which the courts obtained jurisdiction.").

7        Defendant asserts that the Maryland action is more advanced,

8   stating that "[s]ince December 29, 2005, the parties have,

9   collectively, noticed six depositions and served ten document

10  requests and four sets of interrogatories.  There have been three

11  responses to requests for production of documents and two responses

12  to interrogatories." Docket Document No. 8. Moreover, "[t]here have

13  been nearly 100 filings in the Maryland County Circuit Court since

14  the case commenced." Id.

15       Plaintiffs concede that the Maryland action is more advanced,

16  but assert that this progress is not related to the merits of the

17  case.  Docket Document No. 16.  They argue that the discovery has

18  mostly been related to jurisdictional issues, and, therefore, the

19  Maryland action is not much more advanced that the current action.

20  Id.  Defendant does not deny this assertion.  See Docket Document

21  No. 18.

22       We note that, overall, the Maryland action is certainly more

23  advanced since discovery has begun and the docket for the Maryland

24  action contains far more filings than the docket in the present

1    federal action.  However, this is not "indicative of an appreciable

2    advancement that might counsel against the Court's exercise of

3    jurisdiction," because in cases in which a federal court surrendered

4    jurisdiction to a state court, the relative progress in the state

5    court was markedly greater than the progress that has been made in

6    the Maryland action to date.  See, e.g., Irizarry-Perez v. Mitsubishi

7    Motors Corp., 758 F. Supp. 100, 101-2 (D.P.R. 1991)(citing numerous

8    cases which came out in favor of abstention only after noting

9    substantial progress in the state cases); see also Villa Marina, 947

10   F.2d at 535 (finding that abstention was warranted because ten

11   depositions were completed, a pretrial report had been filed, and an

12   extensive preliminary injunction hearing was held, which produced

13   multiple volumes of transcript and covered the merits of one of the

14   plaintiff's claims).

15       We further find that this factor does not weigh in favor of

16   abstention because, as Plaintiffs point out, discovery to date has

17   mostly focused on jurisdictional issues, and not on the merits of the

18   case.  See Docket Document No. 16; Villa Marina, 947 F.2d at 535

19   (noting that abstention was warranted because the preliminary

20   injunction hearing at the state level covered the merits of one of

21   the plaintiff's claims and "thus represented significant development

22   in the case"); Ramirez v. Skeete, 671 F. Supp. 892, 894 (D.P.R.

23   1987)(finding that abstention was warranted because discovery in

Civil No. 06-1508 (JAF)                                              -17-

1    state proceeding had developed facts essential to the merits of the
2    case).

3         Aside from the relative progress of the two cases, Defendant
4    makes one last argument regarding this factor.  He asserts that this
5    factor should be "'examined in light of the motivation of the
6    plaintiff in filing the second suit,'" quoting from Gonzalez, a First
7    Circuit case.  Docket Document No. 8 (quoting 926 F.2d at 4).
8    However, Defendant has taken this quotation out of context.  In
9    Gonzalez, the plaintiff filed both lawsuits - the state-court action,
10   as well as the federal lawsuit.  926 F.2d at 4.  As such, it made
11   sense for the court to evaluate the plaintiff's motivation in filing
12   the second lawsuit.  In sharp contrast, this case involves two
13   lawsuits filed by different parties; Defendant filed the first
14   lawsuit in Maryland state court and the Plaintiff filed the second
15   action in the District Court for the District of Puerto Rico.  Docket
16   Document No. 3.  Therefore, we discredit Defendant's argument
17   regarding Plaintiffs' motivation in filing this case, and conclude
18   that the relative timing and progress of the two lawsuits does not
19   weigh in favor of abstention.

20        3.   **Inconvenience Of The Federal Forum**

21        The inconvenience factor also does not point toward abstention
22   in this case.  As Plaintiffs correctly point out, this factor is
23   "'concerned with the physical proximity of the federal forum to the
24   evidence and witnesses.'" Docket Document No. 16 (quoting Villa

Civil No. 06-1508 (JAF)                                          -18-

1    Marina, 915 F.2d at 15); see also Burns v. Watler, 931 F.2d 140, 147

2    (1st Cir. 1991); Ramirez Commer. Arts, Inc. v. Flexon Co., 242 F.

3    Supp. 2d 113, 115 (D.P.R. 2002). Defendant does not present any

4    argument on this point. See Docket Document Nos. 8, 18. Instead, he

5    asserts that the inconvenience factor weighs in favor of abstention

6    because discovery was more advanced in the Maryland action. Docket

7    Document No. 8. However, the relative progress of the state court

8    proceeding is not relevant to the inconvenience factor; it is related

9    to the relevant timing factor that was addressed above.

10        Plaintiffs assert that the convenience factor does not counsel

11   in favor of abstention because "the apartment building complex that

12   is the object of the partnership agreement [and] that is the subject

13   of both actions is located in Puerto Rico, all of the documents

14   related to its administration and management are also located in

15   Puerto Rico as well as the majority of the fact witnesses." Docket

16   Document No. 16. Defendant does not contest Plaintiffs' assertion

17   that a substantial portion of the evidence and witnesses are located

18   in Puerto Rico, and has not presented any valid arguments as to why

19   it would be inconvenient for him to continue to defend himself in

20   Plaintiffs' case in Puerto Rico. See Docket Document Nos. 8, 18.

21   Based on this information, we find that the inconvenience factor does

22   not weigh in favor of abstention.

23        **4.   Piecemeal Litigation**

With regard to the piecemeal litigation factor, the First Circuit has explained that,

> [a] federal lawsuit should not be dismissed in deference to state litigation simply because two courts would be deciding related - or even the same - issues.  Instead, the district court must look beyond the routine inefficiency that is the inevitable result of parallel proceedings to determine whether there is some exceptional basis for requiring the case to proceed entirely in the [state] court.

Villa Marina, 947 F.2d at 535. Defendant, with no explanation, asserts that this factor militates in favor of abstention because "all matters in controversy here can be fully adjudicated in the state court proceedings."  See Docket Document No. 8 (internal quotations and citations omitted).  This argument fails because it asserts nothing beyond the "routine inefficiency that is the inevitable result of parallel proceedings," which the First Circuit clearly stated is not enough to warrant abstention. See Villa Marina, 947 F.2d at 535; see also Gonzalez, 926 F.2d at 4 ("Concern with piecemeal litigation should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate fora, not the mere possibility of duplication.").

Accordingly, we find that the piecemeal factor does not weigh in favor of abstention.

**5.   Whether State Or Federal Law Controls**

The claims brought in the federal action were brought under Puerto Rico Commonwealth law, while the Maryland action involves

1    claims brought under either Maryland state or D.C. law.  No federal

2    claims were brought in either lawsuit.  "The presence of state law

3    issues weighs in favor of [abstention] only in 'rare circumstances.'"

4    Villa Marina, 915 F.2d at 15 (quoting Moses H. Cone, 460 U.S. at 26).

5    "Courts generally have agreed that rare circumstances exist only when

6    a case presents complex questions of state law that would best be

7    resolved by a state court."  Id. (internal quotations omitted).  In

8    light of this standard, we find that Defendant's assertion that

9    "Plaintiffs' course of action is one based strictly on state law,"

10   Docket Document No. 8, with nothing more, is insufficient.  Not only

11   has Defendant failed to allege that Plaintiffs' claims present

12   complex questions of state law, but he has also failed to explain why

13   the Maryland court would be better suited to deal with these claims,

14   which were brought under Puerto Rico Commonwealth law.  Accordingly,

15   we find that this factor also does not weigh in favor of abstention.

16       **6.   Whether The State Forum Will Adequately Protect The**
17            **Parties' Interests**

18       Defendant's argument with regard to the last factor fails as

19   well.  Rather than affirmatively stating how the state forum would

20   adequately protect the parties' interests, Defendant merely asserts

21   that "there is no indication [that] the Maryland state forum would be

22   inadequate for protecting Plaintiffs' interests."  Docket Document

23   No. 8.  In this Circuit, "it is not enough merely to mention a

24   possible argument in the most skeletal way, leaving the court to do

Civil No. 06-1508 (JAF)                                            -21-

1    counsel's work, create the ossature for the argument, and put flesh

2    on its bones."   Hernandez v. Smith Kline Beecham Pharm., 2005 U.S.

3    Dist. LEXIS 27995 (D.P.R. 2005) (quoting United States v. Zannino,

4    895 F.2d 1, 17 (1st Cir. 1990)).

5         Accordingly, we find that, after careful consideration of the

6    Colorado River factors, we should retain jurisdiction over this case

7    and not stay the proceedings pending the outcome of the Maryland

8    action.

9                                **IV.**

10                              <u>**Conclusion**</u>

11        For the foregoing reasons, we **DENY** Defendant's motion to

12   dismiss, and **DENY** Defendant's request that we abstain from this case.

13   <u>Docket Document Nos. 8, 10</u>.

14        **IT IS SO ORDERED.**

15        San Juan, Puerto Rico, this 11th day of May, 2007.

16                                  S/José Antonio Fusté
17                                  JOSE ANTONIO FUSTE
18                                  Chief U.S. District Judge